IN THE

# APPELLATE COURT

OF THE .

## STATE OF INDIANA,

AT INDIANPOLIS, MAY AND NOVEMBER TERMS, 1920, IN
THE ONE HUNDRED FOURTH YEAR
OF THE STATE.

---

OHIO OIL COMPANY *v.* FOWLER.

[No. 10,405. Filed October 27, 1920.]

MINES AND MINERALS.—*Oil and Gas Lands.—Joint Lease.—Lease
of Separate Tracts Owned Severally by Lessors.*—An oil and
gas lease made by husband and wife, who were designated
therein as the first party, describing the land by boundaries
and as containing a certain number of acres, and making no
reference to separate ownership of the several tracts leased,
and providing as consideration one dollar and delivery to the
first party of a stipulated share of all oil produced; and re-
quiring the second party to complete a well "on said lands"
within a certain time, is a joint lease which is satisfied by.the
completion of a single well, though the lease covered three
tracts of land, two of which belonged to the husband and one to
the wife.

From Pike Circuit Court; *John L. Bretz,* Judge.

Action by Elijah T. Fowler against the Ohio Oil Com-
pany. From judgment for plaintiff, the defendant ap-
peals. *Reversed.*

*S. J. Gee* and *Richardson & Taylor,* for appellant.
*John L. Sumner* and *Frank Ely,* for appellee.

ENLOE, P. J.—On March 5, 1914, the appellee was the
owner of two certain.tracts of land in Pike county, In-

diana, containing in both tracts about forty-one acres. One of said tracts was in the northeast quarter, and the other in the southeast quarter, of section 30, township 1 north, range 8 west. Alice J. Fowler, the wife of appellee was the owner at that time of 11¾ acres of land in the southeast quarter of said section, and her land was adjacent to the lands of her husband in said quarter section. The land owned by appellee in the northeast quarter of said section did not adjoin either of said two other tracts.

On the date above specified the appellee and his said wife entered into an agreement commonly known as an oil and gas lease, covering the premises in question. The lease, so far as the same is material to be considered in this case, was as follows:

"This agreement, made and entered into this 5th day of March, 1914, by and between Elijah T. Fowler and Alice J. Fowler, his wife, of Petersburg P. O. County of Pike, and State of Indiana, hereinafter to be known as the First Party, and Emery Petroleum Company of Bradford, Pa., hereinafter known as Second Party.

"WITNESSETH: That the First Party, in consideration of one dollar received from the second party, the receipt of which is hereby acknowledged, and the further consideration of covenants and agreements hereinafter to be paid, kept and performed by the second party, does hereby grant, let and convey to said second party, all the oil and natural gas in, under and on certain tract or tracts of land hereinafter described, and the exclusive right to place, construct and use thereon the pipe lines, machinery and structures and appliances for operating for and removing and marketing oil and gas products.

"Said lands being situate in Madison Township, Pike County, and State of Indiana, and bounded and described as follows: * * * Hereby waiving all rights under Homestead and exemption laws of this State. Containing 52¾ acres more or less. * * *

"5. In consideration of such grant and conveyance the said second party covenants and agrees: First, to deliver to the credit of said first party, free of cost, in pipe lines, tanks and reservoirs, to which the wells may be connected, the equal one-eighth ($\frac{1}{8}$) part of all the oil produced and saved from such lands; * * *."

"6. Second Party covenants further, to complete a well on said lands within twelve months from the date hereof, or to pay a rental at the rate of one dollar ($1.00) per acre per annum, payable quarterly in advance, for each additional three months such completion is delayed beyond the specified time, until such well is completed; and it is agreed that the completion of such well shall be a full liquidation of all future rentals under this agreement."

This lease was, by the Emery Petroleum Company, duly assigned to the appellant on June 21, 1916. Both the lease and the assignment thereof were duly recorded in the recorder's office of Pike county.

The complaint in this case, which was in two paragraphs, was filed October 24, 1917. The first paragraph was the ordinary complaint to quiet title; the second paragraph alleged that in November, 1915, the Emery Petroleum Company drilled a well on the lands of appellee; that the same was flowing about twenty barrels of oil per day; that, before the casings were removed and said well cleaned out, said company shot the well with some powerful explosive, which destroyed the well by forcing the bottom of the well into a stratum of water which they knew lay just below the bottom of the oil sand; that the shooting of the well was careless, negligent and wilful, and completely destroyed the well for oil purposes.

It is further alleged that in the month of February, 1916, said lessee drilled another well on the leased lands of appellee; that the well was drilled into the oil sand and was producing about twenty barrels per day; that

said lessee negligently and wilfully drilled said well through the oil sand and into a stratum of water which it knew lay immediately thereunder, and thereby destroyed the well, and forced the oil back from the well and into lands owned by other persons, and into wells on such other lands where the same was pumped out.

To this complaint, after the court had overruled its demurrer to the second paragraph thereof, the appellant answered first by general denial; and, second, by an affirmative paragraph, to which the court sustained a demurrer. The cause was submitted to the court for trial upon the issues thus formed, and resulted in a finding and decree in favor of appellee.

The only alleged error properly presented on this appeal relates to the action of the trial court in overruling appellant's motion for a new trial.

Primarily, this case turns upon the construction to be given to the lease above set out. The appellee in his brief filed herein says: "Appellant relies solely on the proposition that the lease in question is a joint lease; and that drilling a productive well on the tract belonging to Alice Fowler vests title and right in the oil company to the tracts of her husband. * * * The present defendant (appellant) is the assignee of the Emery Oil Company to whom appellee originally leased his land. The whole case turns upon that point. If the contention of appellant is correct the court must needs decide in its favor."

We concur in the view thus expressed and shall therefore first consider the nature of the lease in question; for, if it is a joint lease, the court erred in sustaining the demurrer to appellant's second paragraph of answer, and in overruling its motion for a new trial.

In the case of *South Penn Oil Co.* v. *Snodgrass* (1912), 71 W. Va. 438, 76 S. E. 961, 43 L. R. A. (N. S.) 848, an oil and gas lease had been executed by three

several owners of contiguous lands.    One of said lessors
was the owner of 329 acres, another the owner of 143
acres and the other lessor the owner of 127½ acres of
land.    The lease recited a consideration of one dollar
paid and the covenants and agreements therein con-
tained to be kept and performed by the lessee.    The
lessee drilled wells on only one of said tracts and the
owners of the other two of said tracts sought a for-
feiture for failure to drill wells on either of their said
tracts.    In passing upon the question, the court said:
"Failure to drill wells on two of the tracts, namely, the
134-acre tract and the C. A. Snodgrass tract, within the
ten-year period, however, necessitates an inquiry as to
whether there were three separate leases within the
meaning of the proviso, requiring a well to be drilled, and
the clause extending the lease beyond the specific term
of ten years.    We think not.    Nowhere in the lease is
there an intimation of several ownerships of parts of it,
or a suggestion of intent to make separate tenancies.
The proviso is for *'a well,'* not wells, *'on said premises,'*
or payment of a lump sum of money quarterly as rental,
and for liquidation of all rental by *'the completion of
such well';* the clause providing for extension of the
lease beyond the ten-year term requires only production
of oil or gas thereafter, without any stipulation for pro-
duction from more than one place or any particular
place.    Being general, production from any place on the
premises would comply with its terms.    We perceive
no legal obstacle to a combination of several tracts of
land, owned by different persons, into a lease as a single
tract, since the lessors can apportion the rental among
themselves in amounts corresponding with their inter-
ests, and we have decided that it can be done."    (Our
italics.)

The case of *Harness* v. *Eastern Oil Co.* (1901), 49 W.
Va. 232, 38 S. E. 662, was very much like the case at

bar.   Harness was the owner of 152 acres and his wife of thirty-five acres of land.   They executed a lease which covered both tracts of land without specifying ownership as to either.   A well was drilled on the tract owned by the husband, but none on the tract owned by the wife.   In discussing the question presented, the court said: "Appellees insist that the lease should be cancelled in any event as to the thirty-five and one-half acres belonging to plaintiff Anna K. Harness, because it is conceded and defendants do not pretend that they have done anything whatever looking to the development of that tract.   An inspection of the lease will show that the two tracts are leased as one tract of one hundred eighty-seven and one-half acres jointly by the two owners, they were mentioned separately merely for convenience of description, then described as 'containing one hundred eighty-seven and one-half acres, more or less, to have and to hold the above premises,' etc. The royalty of one-eighth of all oil produced and saved from said premises was reserved to the 'first parties' to be delivered in the pipe line with which the second party might connect their wells."   The court held the lease to be joint and denied the right of cancellation as to the second tract.

In *Nabors* v. *Producers' Oil Co.* (1917), 140 La. 985, 74 South. 527, L. R. A. 1918D 1115, which involved the construction of an oil and gas lease, the court said:

"The grounds on which the plaintiffs sued for a decree of forfeiture of the lease, as set forth in their petition, may be summarized as follows, viz.:   *   *   * Second.   That the contract was not joint, but severable, and that therefore, even if the drilling of the well on the land of E. A. Nabors and Mrs. Sallie Mag Nabors prevented a forfeiture of the lease as to their land, it did not prevent a forfeiture of the lease of the lands belonging to the other lessors."   The lands covered by the

lease there in question were severally owned by the said lessors and were not contiguous tracts. In passing upon the question presented the Supreme Court of Louisiana said: "The second complaint is that the beginning of operations for the drilling of a well on the land of W. A. Nabors and Mrs. Sallie Mag Nabors did not prevent a forfeiture of the lease of the lands of the other grantors. The force of that contention depends upon the contract being severable, not joint or entire. We agree with the finding of the district judge that the contract is not severable, but joint or entire. * * *. With regard to the subject-matter, the authorities agree that the contract is entire and not severable, although it embodies a conveyance or delivery of several things, if the consideration is paid in a gross sum and it is impossible to affirm that the party making the payment would have done so unless the rights he acquired should apply to all the things mentioned. * * * That test is particularly applicable to a mineral lease or option, where the lessee or grantee has paid a gross sum of money for the privilege he acquired on all the lands described in the contract and it is impossible to affirm that he would have paid a proportionate consideration for the lease or option on only a portion of the land."

In Thornton's treatise on the Law of Oil and Gas (3d ed.) §91, it is said: "An oil lease whereby several lessors of tracts, owned separately by them, for a gross price, without stating the amount paid to each lessor of the land belonging to him, creates a joint obligation on the part of all lessors."

In 6 R. C. L. §246, p. 858, it is said: "It is not always an easy matter to determine just what contracts are severable and what are not. The authorities agree that in determining whether a tract shall be treated as severable or as an entirety the intention of the parties will control, and this intention must be determined by a

fair construction of the terms and provisions of the contract itself. In order to arrive at a correct construction, due regard must be had of the intention of the contracting parties as revealed by the language which they have employed, and the subject-matter to which it has reference. * * * The principle by which the courts are governed when they declare that a contract about several things, but with a single consideration in gross, is entire and not severable, is that it is impossible to affirm that the party making the contract would have consented to do so unless he had supposed that the rights to be acquired thereunder would extend to all things in question." Numerous authorities are cited in support of the above propositions.

It appears from the record in this case that a well had been drilled on the lands owned by Alice J. Fowler; that, at the time of the trial hereof, said well was producing oil in paying quantities; that the one-eighth part thereof reserved as royalty by said lessors was then, and had been since said well was completed, paid to the plaintiff herein.

Under all the authorities, we must hold that the lease in question was a joint lease; that the decision of the court is not sustained by sufficient evidence and is contrary to law. Having reached this conclusion, other questions relating to alleged errors in admitting certain evidence need not be considered.

The judgment is reversed, with directions to the trial court to sustain appellant's motion for a new trial and for further proceedings.